IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DOMINIC JOSEPH, M.D.,           §
                               §
          Plaintiff,           §
                               §
v.                             §        CIVIL ACTION NO. H-03-5402
                               §
UNIVERSITY OF TEXAS MEDICAL    §
BRANCH AT GALVESTON and        §
WILLIAM READING, M.D.,         §
                               §
          Defendants.          §


MEMORANDUM AND ORDER


Now pending is Defendants University of Texas Medical Branch

at Galveston's and William Reading M.D.'s Motion for Partial

Dismissal (Document No. 89).[1]   After carefully considering the

motion, response, reply, and the applicable law, the Court

concludes that the motion should be granted.

------

[1] Although Defendants move to dismiss Plaintiff's retaliation
claim pursuant to Federal Rule of Civil Procedure 12(b), the
motion, filed after Defendants filed their answer, would typically
be treated as a motion for judgment on the pleadings under Rule
12(c).  *See* Jones v. Grenninger, 188 F.3d 322, 324 (5th Cir. 1999).
Because both sides presented matters outside the pleadings in
support of their respective positions, however, the Court conducted
a telephone conference to give the parties notice that the motion
was being converted to one for summary judgment under Rule 56 and
an opportunity to present additional materials.  *See* FED. R. CIV. P.
12(c).  The parties informed the Court that there were no addi-
tional materials to be submitted, with the exception of one legal
authority that Plaintiff submitted to the Court by letter.  The
motion is therefore ripe for adjudication.

The standard for review of a motion for summary judgment is
set forth in the Memorandum and Order entered December 30, 2005,
and need not be restated here.

I. <u>Background</u>

The background for this suit and identities of the parties may be found in the Court's Memorandum and Order entered December 30, 2005 (Document No. 72) and Memorandum and Order entered March 27, 2006 (Document No. 82). The sole remaining claim is Plaintiff's Title VII retaliatory discharge claim, which Defendants now move to dismiss on the ground that Plaintiff failed administratively to exhaust it. Defendants point out that Plaintiff neither checked the box for "retaliation" on his EEOC charge nor otherwise indicated in the narrative portion of his EEOC charge that he sought redress for retaliation based on internal complaints of race/national origin discrimination. *See* Document No. 89 ex. 1. Thus, Defendants argue, "because the charge of discrimination upon which [Plaintiff] has predicated this lawsuit contains no allegations of retaliation for engaging in protected activity," and because "such a claim [could not] be reasonably expected to grow out of the allegations set forth in the charge," Plaintiff did not administratively exhaust a retaliation claim. Document No. 83 at 1-2. Plaintiff disagrees, contending that his subsequent communications to the EEOC "triggered the EEOC to investigate the possibility of protected activity by [Plaintiff] as the basis for any unlawful retaliation" and were therefore sufficient to exhaust his retaliation claim.

2

## II.  Discussion

Before pursuing claims in federal court, employment discrimination plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC. Pacheco v. Mineta, --F.3d--, 2006 WL 1195989, at *3 (5th Cir. May 5, 2006); Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002).  "The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers."  Pacheco, 2006 WL 1195989, at *3.  "On the one hand, because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of the EEOC complaint should be construed liberally." Id. (citing Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir. 1983); Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970).  "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." Pacheco, 2006 WL 1195989, at *3 (citing Sanchez, 431 F.2d at 466-67).  Accordingly, the Fifth Circuit "interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'"  Id.  In this regard, courts must

3

"engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Pacheco, 2006 WL 1195989, at *3 (citing Fellows, 701 F.2d at 451; Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993); Ong v. Cleland, 642 F.2d 316, 319 (9th Cir. 1981)).

It is undisputed that Plaintiff filed a charge of discrimination with the EEOC on July 18, 2002. *See* Document No. 89 ex. 1.  When he did so, Plaintiff--a well educated medical doctor-- did not complain that he was subject to retaliation for engaging in a protected activity.  Id.  When asked to specify the grounds for his charge in the section of the preprinted form labeled "cause of discrimination based on," Plaintiff checked only one box, "national origin," and not the box for "retaliation" notwithstanding the form's instructions to "check appropriate box(es)."  Id.  Plain- tiff's national origin discrimination charge included two typewritten pages of "the particulars," organized into nine separate, numbered paragraphs, in which he compared his own perceived mistreatment to the more favorable treatment accorded his "non-Indian colleagues."  Id.  Those who mistreated him were identified as Dr. Ducate, a "Caucasian female," and Dr. Reading, "who is Caucasian."  Id.  Notwithstanding the meticulous details Plaintiff included in his EEOC charge, he never claimed that he had made any internal complaints of national origin discrimination, or

4

that he had filed any internal grievances against those involved in the decision to terminate him, or that he believed his termination was in retaliation for his having complained about discriminatory employment practices, such as national origin discrimination; nor did Plaintiff otherwise allege any facts out of which an EEOC investigation of a potential retaliatory motive for his termination could reasonably have been expected to grow.   Id.

In the last paragraph of his narrative Plaintiff summarized:

IX.   I believe that my termination was due to several factors, and one of those is the fact that I am of Indian national origin.   Another factor that led to my termination, I believe, was that I was vocal in my criticism of how patients were being mistreated and the hospital administration's insistence on housing some patients in seclusion for unlawful periods of time.   I believe that the actions of the University of Texas Medical Branch at Galveston violate Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act.

Although he thought his criticism of patient care and hospital administration was an additional factor leading to his discharge, this criticism is not a factor on which he now claims retaliation. Indeed, Plaintiff does not contend that such conduct is an activity protected by Title VII that would support a retaliation claim, and this statement could not reasonably have been expected to prompt the EEOC to investigate a potential Title VII retaliation claim. See 42 U.S.C. § 2000e-3(a) (making it "an unlawful employment practice for an employer to discriminate against any of his

employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]"); *see also* <u>Baker v. Union Pac. R.R. Co.</u>, 145 F. Supp. 2d 837, 844 (S.D. Tex. 2001) ("To qualify as protected activity, the complaints must relate clearly to discrimination covered by Title VII.").

Thus, while Plaintiff's EEOC charge was based upon and clearly exhausted a claim for national origin discrimination, it identified no facts that could form the basis of a potential retaliation claim and presented no predicate upon which one reasonably would expect the EEOC to investigate a retaliation claim.

Plaintiff does not seriously dispute that his EEOC charge was insufficient to put a reasonable EEOC investigator on notice of a retaliation claim; instead, Plaintiff argues that his allegations in a letter that he wrote to the EEOC four months later, *see* Document No. 86 ex. A, triggered the EEOC to investigate a potential retaliation claim. *See* Document No. 86 at 4-7.[2]   In

---

[2] To the extent Plaintiff contends that his counsel's letter to the EEOC, written more than a year after Plaintiff filed his EEOC charge, is evidence that his retaliation claim was within the scope of the EEOC investigation that grew out of his discrimination charge, the contention is without merit.  The counsel's letter, dated July 22, 2003, does not mention any protected activity engaged in by Plaintiff or otherwise disclose facts that would support a belief that Reading discharged Plaintiff for having engaged in a protected activity.  *See* Document No. 86 ex. H.  Indeed, Plaintiff's present argument that the EEOC investigated a retaliation claim is rendered hollow by the fact that a year after Plaintiff filed his EEOC charge and only a month before the EEOC issued its right to sue letter, Plaintiff's counsel never mentioned a retaliation claim and advanced no retaliation evidence or argument to the EEOC.

Plaintiff's nine-page letter, dated November 22, 2002, and written in response to UTMB's September 26, 2002 letter to the EEOC, Plaintiff at great length sought to rebut the legitimate, non-discriminatory reasons proffered by UTMB for its decision to terminate him. *See* Document No. 86 ex. A. Plaintiff's present argument is that "the EEOC learned from [him] in his letter of November 22, 2002, that, when Ducate initiated a disciplinary action against him when he advised the Chief Psychologist's secretary that his patient care schedule took precedence over the last-minute invitation he received to attend the psychologists' meeting, he filed a grievance against Ducate." *See* Document No. 86 at 4; ex. A at 2 ("[W]hen [Ducate] tried to discipline me for seeing patients rather than attending a psychologists' meeting of which I had no advance knowledge, I filed a grievance against her.").[3] Plaintiff contends that "it is obvious that [his] letter

---

[3] Ducate reprimanded Plaintiff for, among other things, refusing to attend the psychologists' meeting on June 29, 2001. *See* Document No. 44 ex. 6 at 2009. Plaintiff contends that it was in response to this reprimand that he filed an internal grievance against Ducate in which he stated, "I feel I have been singled out and victimized and discriminated secondary to my racial origin." *See* Document No. 86 at 5. Plaintiff is mistaken. In the internal grievance he filed about the June 29, 2001 reprimand, Plaintiff claimed that Ducate's reprimand was "an attempt to humiliate [him] as a Board Certified Psychiatrist" and requested that the reprimand be withdrawn immediately "with proper explanation," but Plaintiff made no claim that Ducate was discriminating against him on account of his national origin/race. *See* Document No. 44 ex. 6 at 358, 1967. Plaintiff did assert discrimination "secondary to [his] racial origin" a month later in another internal grievance, dated August 2, 2001, filed in response to another written reprimand, this one for allegedly failing to, *inter alia*, complete needed

led the EEOC to issue a subpoena in which it sought that very document [i.e., the June 29, 2001 grievance referred to in the November 22, 2002 letter]."  See Document No. 86 at 5.[4]  Had Defendants complied with the subpoena, Plaintiff argues, the EEOC would have received a copy of the June 29th grievance and would have therefore uncovered the facts upon which Plaintiff now bases his retaliation claim.  Id. at 5.  Thus, Plaintiff argues, "it is patent that [Plaintiff's] references to complaints against Ducate triggered the EEOC to investigate the possibility of protected activity by [Plaintiff] as the basis for any unlawful retaliation," and because the EEOC actually attempted to investigate a retaliation claim, Defendants cannot argue that an investigation into retaliation could not have been reasonably expected to grow out of Plaintiff's EEOC charge.  Id. at 6-7.

In addition to the fact that Plaintiff made no claim of discrimination "secondary to my racial origin" in his June 29th

---

paperwork, admit inmates, and move out of his former office in a timely fashion.  Id. at 636, 1993.

[4] On January 14, 2003, the EEOC asked UTMB to produce various documents, including "documentation showing any and all complaints or allegations whether formal or informal made against Dr. Suzanne Ducate, during her employment with your organization" and "a copy of all investigative notes taken during the course of any such investigation, including those related to the charges raised by [Plaintiff]."  See Document No. 86 ex. C ¶ 1.  The EEOC requested the same information with respect to Plaintiff.  Id. ex. C ¶ 2. The EEOC subsequently issued a subpoena to obtain this information, see id. ex. E, but Plaintiff contends that UTMB never turned over the requested information, see id. ex. G.

grievance, there is no evidence that Plaintiff's November 22, 2002, letter actually triggered any EEOC attempt to investigate any retaliation claim.[5]  In his letter, Plaintiff stated, "I wish to represent that my termination was prejudicial and discriminatory . . ." and concluded his letter, "[i]n summary," by stating that similarly-situated Caucasian professionals were treated more favorably.  *See* Document No. 86 ex. A at 9.  Nowhere in the nine-pages of the highly organized and detailed letter did Plaintiff allege that his termination was retaliatory, nor did he disclose any facts indicating that he had made an internal complaint of national origin/race discrimination or that he had otherwise opposed an employment practice made unlawful by Title VII.  Neither Plaintiff's reference to his having filed an internal grievance against Ducate nor the context in which it was made could reasonably have been expected to prompt the EEOC to investigate a non-asserted retaliation claim.[6]  Plaintiff's assertion that, but

---

[5] Although the Fifth Circuit has stated that it is the scope of the investigation that would reasonably be expected to grow out of the EEOC charge–rather than the actual scope of the EEOC investigation–that determines whether a claim is exhausted, the fact that the EEOC investigated a particular claim "creates a strong inference that such a claim was presented." *See* Clark v. Kraft Foods, Inc., 18 F.3d 1278, 1280 (5th Cir. 1994).  Thus, whether the EEOC actually investigated Plaintiff's retaliation claim is relevant to whether Plaintiff exhausted that claim.

[6] Moreover, even if the EEOC had investigated the internal grievance referenced in the November 22, 2002 letter, Plaintiff made no mention of race/national origin discrimination in that grievance, *see* Document No. 44 ex. 6 at 358, 1967, and no reasonable EEOC investigator would have determined that the

for the reference to the grievance in the November 22, 2002 letter, the EEOC would not have subpoenaed copies of "any and all complaints or allegations whether formal or informal made against [Ducate]" and "all investigative notes taken during the course of any such investigation, including those related to the charges raised by Dr. Joseph," is without merit.  To the contrary, the documents requested by the EEOC would have been relevant to the EEOC's investigation of Plaintiff's specific charges of national origin/race discrimination contained in his EEOC charge and his November 22, 2002 letter.  There is no indication that Plaintiff's passing reference to one internal grievance in his November 22, 2002, letter--rather than his clearly stated charges of national origin/race discrimination--prompted the subpoena.  In other words, the broad subpoena issued by the EEOC in and of itself is no evidence of a *sua sponte* attempt by the EEOC to investigate "retaliation" that was never charged.

In addition, although Plaintiff's argument may be that his internal grievances against Ducate were responsive to the EEOC's subpoena--and, hence, that the EEOC (1) would have seen the August 2, 2001 grievance in which Plaintiff stated, "I feel I have been singled out and victimized and discriminated secondary to my racial origin," had Defendants fully complied with the subpoena, and (2) would then have had a basis for investigating a potential

grievance constituted a protected activity under Title VII.

10

retaliation claim based on that grievance--Plaintiff offers no explanation as to why *Plaintiff* never told the EEOC that he had made an internal complaint of race discrimination against Ducate six months before he was discharged. Plaintiff obviously knew about his own August 2, 2001 grievance against Ducate. If Plaintiff harbored even the slightest belief that his August 2, 2001, grievance was a cause of his termination six months later and/or that the EEOC was attempting to investigate a potential retaliation claim, Plaintiff and/or his counsel clearly could and presumably would have brought the August 2, 2001, grievance and its contents directly to the attention of the EEOC.

In sum, there is no evidence that Plaintiff exhausted the retaliation claim that he now asserts. Plaintiff did not check the box plainly provided to assert "retaliation" as a claim and, notwithstanding his highly detailed and well organized typewritten EEOC charge, he did not assert any facts in its narrative portion that he had engaged in an activity protected by Title VII, that he had suffered a retaliatory discharge, or that he in any way was seeking redress for retaliation. In other words, a fact-intensive analysis of the statement given by Plaintiff in his EEOC charge reveals that Plaintiff's present retaliation claim could not reasonably have been inferred from or expected to grow out of the EEOC charge. Moreover, there is no evidence that Plaintiff ever made a retaliation claim to the EEOC or that the EEOC ever actually

11

investigated or attempted to investigate retaliation.  There is no evidence, for example, that Plaintiff ever informed the EEOC--in his November 22, 2002 letter or elsewhere--that he had made an internal complaint of race/national origin discrimination or that he had opposed any other practice proscribed as an unlawful employment practice by Title VII.  Likewise, there is no evidence that the EEOC ever mentioned a potential retaliation claim in its communications to the parties or made any determinations about a retaliation claim.  Plaintiff wholly failed to exhaust his administrative remedies with respect to his present retaliation claim.

III.  <u>Order</u>

Accordingly, it is hereby

ORDERED that Defendants' Motion for Partial Dismissal (Document No. 89) is GRANTED, and Plaintiff's retaliation claim is DISMISSED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 23rd day of May, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

12